

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NOS. PD-0936-07 AND PD-0937-07

**THE STATE OF TEXAS**

**v.**

**CANDELARIO GARCIA-CANTU, Appellee**

## ON APPELLEE'S PETITIONS FOR DISCRETIONARY REVIEW
## FROM THE NINTH COURT OF APPEALS
## MONTGOMERY COUNTY

KEASLER, J., filed a dissenting opinion in which KELLER, P.J. and HERVEY J., joined.

## O P I N I O N

I respectfully dissent. The totality of the circumstances do not support the majority's

conclusion that the citizen-police interaction between Candelario Garcia-Cantu and Officer

Okland amounted to a seizure under the Fourth Amendment.

Supreme Court precedent instructs that the "free to leave" test has no application

under the facts of this case. In *Florida v. Bostick*, Broward County narcotics agents boarded

a bus that was on a stopover in Ft. Lauderdale.[1] The agents asked Bostick, the respondent, for permission to search his suitcase.[2] After Bostick consented to the search, the agents discovered cocaine.[3] Bostick was then arrested and charged with trafficking cocaine.[4] Claiming that the search conducted by the agents violated his Fourth Amendment rights, Bostick moved to suppress the cocaine at trial.[5] The Supreme Court granted certiorari to determine whether Bostick was "seized" within the meaning of the Fourth Amendment when the agents requested his consent to search his suitcase.[6]

The Court rejected Bostick's argument that he was seized under the Fourth Amendment because a "reasonable bus passenger would not have felt free to leave under the circumstances of this case because there is nowhere to go on a bus."[7] In doing so, the Court stated that "when the person is seated on a bus and has no desire to leave, the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter."[8] Concluding that "Bostick's freedom of movement was

---

[1] 501 U.S. 429, 431-32 (1991).

[2] *Id.*

[3] *Id.* at 431.

[4] *Id.* at 432.

[5] *Id.*

[6] *Id.* at 433.

[7] *Id.* at 435.

[8] *Id.* at 435-36.

restricted by a factor independent of police conduct[,]" the Court held that "the appropriate inquiry is whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the conversation."[9] This standard, according to the Court, "applies to encounters that take place on a city street or in an airport, and it applies equally to encounters on a bus."[10] Finally, without deciding whether Bostick was "seized," the Court remanded the case to the Florida Supreme Court so that it could consider the totality of the circumstances under the correct legal standard.[11]

In *Florida v. Royer*,[12] the Supreme Court stated that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen."[13] And in *Illinois v. Lidster*,[14] after quoting the above language from *Royer*, it added that "it would seem anomalous were the law (1) ordinarily to allow police to seek the voluntary cooperation of pedestrians but (2) ordinarily

---

[9] *Id.* at 436.

[10] *Id.* at 438.

[11] *Id.* at 437.

[12] 460 U.S. 491 (1983).

[13] *Id.* at 497.

[14] 540 U.S. 419 (2004).

to forbid police to seek similar voluntary cooperation from motorists."[15]

Like Bostick, Garcia-Cantu's freedom of movement was restricted by a factor independent of Officer Okland's conduct. Garcia-Cantu deliberately and voluntarily parked his truck at the dead-end of the 300 block of South Pacific while waiting for his friend to exit the house at 309 South Pacific. The record makes clear that the 300 block of South Pacific is a very narrow dead-end street with no center dividing line. The narrow character of the street does not permit two vehicles to pass freely while traveling in opposing directions. In such a circumstance, one vehicle would be forced to yield to another. Parked with the front of his truck facing the dead-end, Garcia-Cantu placed himself in the position of having no direct thoroughfare. So even without the presence of Okland's patrol car, Garcia-Cantu's egress was not completely uninhibited. In this position, any vehicle traveling on the street could further restrict Garcia-Cantu's departure.

I would agree with the majority in reversing this conviction if Garcia-Cantu had expressed any reluctance to talk to Officer Okland. But there was no indication that Garcia-Cantu wanted to leave or that he informed Officer Okland that he did not want to speak to him. And, as *Bostick* makes clear, this is the appropriate test.

Of course, as we said in *State v. Velasquez*,[16] a case involving an encounter between a police officer and a passenger on a bus,

---

[15] *Id.* at 426.

[16] 994 S.W.2d. 676 (1999).

even an innocent passenger's pulse might race when a police officer identifies himself and begins asking questions. He might understandably be uncomfortable saying, 'Officer, I don't want to talk to you. Please leave me alone.' But the Constitution does not guarantee freedom from discomfort. And the test is not whether a timid person would feel free to terminate the interview. Instead, the Supreme Court uses a 'reasonable person' standard."[17]

I think it is clear that had Garcia-Cantu been in a public street with a clear thoroughfare, there would have been no Fourth Amendment violation. So according to the majority's reasoning, all one needs to do to insulate oneself from police contact is to duck into a blind alley upon seeing an officer approaching or pull his or her vehicle onto a dead-end street. The person would then be able to say, in effect, "King's X! I'm on base. You can't even walk up to me and attempt to talk to me. Anyone else in the world can, but you can't." This would indeed add a new dimension to the word "silly."

The majority has labored mightily to justify its conclusion that Garcia-Cantu's Fourth Amendment rights were violated, citing many federal and state opinions, including even at least one pre-*Bostick* case from the Ninth Circuit. Yet, it does not include any Supreme Court cases that are directly in point, because there are none. And, after all, that Court is the ultimate and "infallible ... because [it] is final"[18] Fourth Amendment authority. I believe that in light of its recent search and seizure opinions that it would reach the same conclusion that I do—that this is a police encounter permissible under the Fourth Amendment. Because the majority holds otherwise, I dissent.

---

[17] *Id.* at 679.

[18] *Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring in result).

DATE DELIVERED: May 7, 2008
PUBLISH